# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| DION JOHNSON, <br><br> *Plaintiff*, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> *Defendant*. | No. 3:17-cv-1255 (MPS) |

## MEMORANDUM AND ORDER

In this appeal from the Social Security Commissioner's denial of benefits, Dion Johnson argues that the Administrative Law Judge did not follow my previous decision concerning his case on remand. Because any legal error was harmless in light of the voluminous evidence supporting the ALJ's determination of Johnson's residual functional capacity, I DENY Johnson's motion to reverse (ECF No. 18), GRANT the Commissioner's motion for an order affirming her decision (ECF No. 26), and AFFIRM the Commissioner's decision.

## I.     Background

This is the second time Mr. Johnson's case has come before this Court. I assume familiarity with Johnson's medical history.[1] I also assume familiarity with my decision in *Johnson v. Colvin*, No. 3:14-cv-1446 (MPS), 2016 WL 659664 (D. Conn. Feb. 18, 2016), where I remanded Johnson's case to the agency for proper application of the "treating physician rule" to the June 24, 2011 and

---

[1] Although the parties did not file a joint stipulation of facts, I incorporate by reference the Commissioner's recitation of the "Relevant Medical Evidence" in her brief (ECF No. 26 at 5–17), which (because Johnson did not file his own statement of evidence), I treat as stipulated.

1

August 10, 2012 opinions of S.J. Naqvi, M.D and Tricia Caron, A.P.R.N, which I discuss further below.[2] (R. 478, 547.)

## II. Discussion

### A. Treating Physician Rule

Johnson has now filed, *pro se*, a one-paragraph summary challenge to the ALJ's decision for failing to follow this Court's mandate on remand. (ECF No. 18.) Johnson does not attach a brief or make any argument in support of his challenge. (*Id.*) Nonetheless, consistent with this Court's broader mandate to "construe [*pro se*] pleadings liberally to raise the strongest arguments they suggest," I consider whether the ALJ properly followed my order on remand to consider and apply the "treating physician rule."[3] *Warren v. Colvin*, 744 F.3d 841, 843 (2d Cir. 2014).

The applicable Social Security regulations provide that opinions by acceptable medical sources are eligible for deference under the "treating physician" rule. *See* 20 C.F.R. § 416.927(a)(2), (c)(2) (for claims filed before March 27, 2017, "treating source[s]" potentially entitled to controlling weight must be an "acceptable medical source"). Under the treating physician rule, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal

---

[2] "A.P.R.N. is an acronym for advanced practice registered nurse." *Johnson*, 2016 WL 659664, at *3 n.3 (citations and internal quotation marks omitted).

[3] The Commissioner, for her part, does not address the treating physician rule, but simply argues that the ALJ's disability determination was supported by substantial evidence. (ECF No. 26 at 19–24.) As the Second Circuit has recognized, where the ALJ misapplies the treating physician rule, the disability determination has not been made under the correct legal principles and thus it does not matter whether there was substantial evidence to support the Commissioner's findings. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

citation and quotation marks omitted); *see* 20 C.F.R. § 416.927(c)(2). However, "the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). "The regulations further provide that even if controlling weight is not given to the opinions of the treating physician, the ALJ may still assign some weight to those views, and must specifically explain the weight that is actually given to the opinion." *Schrack v. Astrue*, 608 F. Supp. 2d 297, 301 (D. Conn. 2009); 20 C.F.R. § 416.927(c). In deciding how much weight to give a treating physician's opinion, the ALJ must explicitly consider:

> (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist. After considering the above factors, the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion.

*Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (internal citations, quotation marks, and alterations omitted); *cf. Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) ("[S]lavish recitation of each and every factor [is not required] where the ALJ's reasoning and adherence to the regulation are clear".) "The failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Greek*, 802 F.3d at 375 (citations omitted).

The ALJ here concluded at Step 4 that Johnson had residual functional capacity ("RFC") to perform light work, with certain limitations.[4] (R. 556.) The ALJ's RFC analysis addressed two medical opinions in the record by treating physicians: (1) an August 10, 2012 opinion of S.J. Naqvi, M.D. and Tricia Caron, A.P.R.N.; and (2) an earlier, June 24, 2011 opinion also by Dr. Naqvi and

---

[4] Those limitations were that Johnson could: occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds; occasionally balance; occasionally stoop; occasionally kneel; occasionally crouch or crawl; and have no exposure to unprotected heights or to moving mechanical parts. (R. 556.)

3

Nurse Caron. The ALJ properly applied the "treating physician" rule to the August 10, 2012 opinion, but erred with respect to the June 24, 2011 opinion.

### 1. *August 10, 2012 Opinion of Dr. Naqvi and Nurse Caron*

First, the ALJ concluded that he gave "little weight" to the August 10, 2012 opinion of Dr. Naqvi and Nurse Caron. (R. 559.) The August 10, 2012 opinion ascribed substantial functional limitations to Johnson. (R. 472–73 (noting that during an eight-hour work day, Johnson could "never" stand, walk, lift or carry any weight greater than five pounds, bend, squat crawl, climb, reach, or use his hands and feet repetitively).) The ALJ reasoned that the opinion was not supported by the record evidence, including a history of "generally benign" physical exams. (R. 559.) The ALJ further opined that while Johnson had a "long history of treatment with Charter Oak[] and Dr. Naqvi specializes in Internal Medicine, he appears to have examined the claimant on very few occasions, whereas Nurse Caron appears to have seen the claimant more frequently and regularly." (R. 559.) The ALJ also explained that the August 10, 2012 opinion was "in a checklist form," which was "not very convincing evidence," especially because treatment notes were not submitted in support. (*Id.*) Finally, the ALJ pointed to specific conclusions in the opinion that were contradicted by the Charter Oak treatment notes as indications that the opinion was conclusory. (R. 559–60 (pointing to lack of record evidence for upper or lower extremity dysfunction).) The ALJ concluded: "the opin[i]on from Dr. Navqi is not entitled to controlling weight. Overall, I give the opinion little weight since it has minimal support in the evidence of record." (R. 560.)

In determining that the August 10, 2012 opinion merited "little weight," the ALJ in substance applied each of the *Greek* factors. (*See* R. 559 (explaining (1) that Dr. Naqvi had seen Johnson on "very few" occasions; (2) that the August 10, 2012 opinion had no treatment notes

4

supporting it; (3) that the limitations described in the opinion were inconsistent with the Charter Oak treatment notes over several years; and (4) that Dr. Naqvi specialized in internal medicine.). *See Greek*, 802 F.3d at 375. Even though the ALJ did not explicitly state that he was applying the "treating physician rule," it is clear that the ALJ faithfully applied the regulation by considering each factor, and applicable precedent requires no more. *See Atwater*, 512 F. App'x at 70 (holding that "slavish recitation of each and every factor" under the treating physician rule is unnecessary "where the ALJ's reasoning and adherence to the regulation are clear").[5] Accordingly, the ALJ committed no legal error with respect to the August 10, 2012 opinion.

2. *June 24, 2011 Opinion by Dr. Naqvi and Nurse Caron*

The ALJ gave "greater weight" to the June 24, 2011 opinion, which he characterized as an "opinion provided by nurse Tricia Caron, signed by a physician (name not legible.)." (R. 560.)[6] That opinion indicated, among other things, that Johnson could sit, stand, and walk for 2 hours or more of an eight-hour workday and that Johnson could also perform other activities, such as lifting or carrying weights under 20 pounds, with occasional or greater frequency (R. 541–42). The ALJ

---

[5] In my previous decision concerning Mr. Johnson's case, I directed the ALJ to explicitly determine whether the August 10, 2012 opinion, which is co-signed Nurse Caron, was that of an "acceptable medical source." *See Johnson*, 2016 WL 659664, at *3 ("While the ALJ does discuss whether the opinions are inconsistent with other evidence, the ALJ did not make any finding as to whether the ALJ considered Dr. Naqvi's and Nurse Caron's opinions to be those of an acceptable medical source."). Although the ALJ made no such explicit determination on remand, because the ALJ applied the "treating physician" rule to the August 10, 2012 opinion, he necessarily must have determined that the opinion was that of an "acceptable medical source."

[6] I note that Dr. Naqvi appears to be the physician who signed this opinion as well. *See Johnson*, 2016 WL 659664, at *3 ("Here, the opinions in question were provided by Tricia Caron, A.P.R.N. and co-signed by S.J. Naqvi, M.D. . . . An earlier opinion dated June 24, 2011 states that he could do these activities on a limited basis."); *compare* R. 547 *and* R. 478 (same signature)). The ALJ's statement that the June 24, 2011 opinion was "signed by a physician" suggests that he nonetheless treated the June 24, 2011 opinion as that of an "acceptable medical source" too, but to the extent the ALJ's application of the treating physician rule to this opinion was in error, I discuss below why any such error was harmless.

reasoned that the opinion "show[ed] that [Johnson] was functioning at a higher level" than the August 10, 2012 opinion by Dr. Naqvi, and thus "largely support[ed] [the ALJ's] conclusion" that his RFC determination was correct. (R. 560.)

In contrast to the August 10, 2012 opinion, the ALJ's analysis of the June 24, 2011 opinion on its face applied only one of the *Greek* factors—consistency with the remaining medical evidence. The ALJ had an obligation to consider the opinion under *each* of the factors in deciding how much weight to give it, and he failed to do so. *See* 20 C.F.R. § 416.927(c) ("Unless we give a treating source's medical opinion controlling weight . . . we consider *all* of the following factors in deciding the weight we give to any medical opinion.") (emphasis added). Nonetheless, because correct application of the *Greek* factors to the June 24, 2011 opinion would not have led to a different result, I do not remand this error for further consideration.

### B. The Record Evidence Supports Only One Conclusion

Even where ALJ misapplies the treating physician rule, I need not remand where the correct application of the correct legal principles would lead to the same result. *See Johnson*, 817 F.2d at 986 ("[W]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration."); *cf. Zabala v. Astrue*, 595 F.3d 402, 409–10 (2d Cir. 2010) (finding violation of treating physician rule harmless where there was "no reasonable likelihood" that full compliance with the rule would have changed the ALJ's disability determination).

Even if the ALJ had properly applied the treating physician rule to the June 24, 2011 opinion, there is no reasonable likelihood that the ALJ would have reached a different conclusion given the voluminous record evidence supporting Johnson's residual functional capacity as laid out in the ALJ's RFC.

The ALJ's opinion was thorough, and, in addition to the two opinions above, the ALJ's RFC analysis cited medical evidence between March 2008 and November 2011 that showed consistently benign physical examinations and that Johnson's hypertension and kidney disease were either well-controlled or stable. (*See* R. 558–59 (citing, *inter alia*, R. 395 (April 2009 Charter Oak notes reflecting hypertension in "good control" and normal physical examination); R. 393 (normal July 2010 renal ultrasound); R. 417 (June 2011 Charter Oak notes reflecting normal physical examination and updating medication for hypertension); R. 429–31 (same for November 2011 Charter Oak notes).)

The ALJ's RFC discussion also relied on numerous treatment notes between September 2012 and January 2017 that showed similarly benign physical examinations, normal gait, and that Johnson's impairments (then including diabetes) were controlled. (R. 560–61 (citing, *inter alia*, R. 489–91 (September 2012 Charter Oak notes reflect stable diabetes); R. 493 (October 2012 Charter Oak notes reflecting normal gait and sensation in lower extremities); R. 851 (September 2014 UConn Health report reflecting well-controlled blood pressure, resolved edema, and negative systems exam); R. 917 (March 2015 UConn Health report reflecting that kidney disease, hypertension, diabetes were well-controlled); R. 1278-80 (January 2016 UConn Health report reflecting normal gait, stable kidney disease, controlled blood pressure and diabetes); R. 1304 (January 2017 Charter Oak notes reflect generally benign physical exam).)

Finally, the ALJ relied on and assigned "partial weight" to the June 1, 2015 opinion of Dr. Robert Dodenhoff, the agency's examiner. (R. 561.) Dr. Dodenhoff's physical examination of Johnson was "generally benign." (*Id.; see also* R. 1022–26 (June 1, 2015 opinion).)) Dr. Dodenhoff reported that Johnson "did not require assistance getting on / off the examining table,"

7

could "sit, stand and walk using a cane and lift objects," and should "respond appropriately to supervision, coworkers, and the pressures of [a] work [] setting." (R. 1024.)

In light of the voluminous evidence supporting the ALJ's finding that Johnson had residual functional capacity and thus, was not disabled, application of the correct legal principles, to the extent there was an error, would not change the result here. With regard to the June 24, 2011 opinion, which showed that Johnson could stand, sit, and walk for limited periods during the workday, that opinion was duplicative of the other evidence above demonstrating that Johnson retained some residual functional capacity. *Cf. Zabala*, 595 F.3d at 409 (declining to remand where the evidence not considered under the treating physician rule was "essentially duplicative of evidence considered by the ALJ"). Accordingly, it is clear that the failure to apply fully the treating physician rule to this opinion would not have changed the ALJ's determination. Indeed, as the Commissioner acknowledges, the ALJ "essentially adopted" as his RFC determination the limitations set forth in the June 24, 2011 opinion in any event. (ECF No. 26 at 20–21.)

### III. Conclusion

Because the ALJ correctly applied the treating physician rule to the August 10, 2012 opinion, and any error with respect to the June 24, 2011 opinion was harmless, I DENY Johnson's motion to reverse (ECF No. 18), GRANT the Commissioner's motion for an order to affirm her decision (ECF No. 26), and AFFIRM the Commissioner's decision.

IT IS SO ORDERED.

    /s/
Michael P. Shea, U.S.D.J.

Dated:    Hartford, Connecticut
           December 6, 2018